Good morning, Your Honors. May it please the Court, Rene Pietropalo for Appellant David Payo. I'd like to reserve three minutes for rebuttal.  This appeal requires you to resolve two main questions. First, do the Shepard documents show Mr. Payo's 2008 conviction rested on subsection 1 of Pennsylvania's robbery statute? And if you agree they do, or if you're merely uncertain, then you turn to the second question, do the elements of P.A. robbery match the elements of generic robbery? Subsection 1, like subsection 4, is not generic robbery for several reasons, the most straightforward of which is that these subsections lack generic robberies from the person or immediate presence requirement. I think I should start with the Shepard documents. Yeah. To what extent, I mean, we're trying to parse when a judge who's trying to do the right thing, trying to get information that's essentially factual so that he can make a determination of whether it's going to be 27 or a 33 offense level, or the enhancement. And in terms of trying to do the right thing, you're making a number of arguments that okay, he stepped over the line, and the question is, how so? Let's start. He gives the government at the outset, he says, look, we're going to have this hearing, I guess, October 9. You folks haven't really presented stuff to us here that really helps me. Go back and take another look. What's wrong with that? I absolutely have no doubt that the district court judge was motivated by the best intentions and probably frustrated with lax work on behalf of the but if you're asking at what moment did the government waive, the moment is October 9. But that wasn't the question, though. The question is, what's wrong with that? What's wrong with it is- You're saying to the government, give me the information I need to- Sure. He did that prior to October 9 by the docket entry, and there's no problem with that. In the docket entry, he tells the government, look, you're on notice, the defense counsel has said, citing Peppers, if there are no Shepard documents, I'm required to decide that the conviction is resting on the least culpable conduct, which is a non-qualifier. You've said nothing. I'm giving you another opportunity to provide me with something. In response to that order, which was perfectly fine, the government chose to present no Shepard documents. They're on notice that they need Shepard documents. They're on notice that the defense has objected to the PSR statements to satisfy the career offender designation. And they elect, they choose to present no documents and to rely on nothing, essentially. And so why that's wrong is courts are to rely on the parties to frame the issues. The court is to decide the case based on the facts and the law that's presented by the parties. So when the government, as here, has a burden to prove a sentencing enhancement, that's what makes all the difference. The court at that moment stepping in to relieve the government of its burden, of its waiver, that's violating the principles of party presentation and separation of powers. But I really don't believe you need to get there because I think we win even if you're looking at the records. And you'd at least concede district judges have an opportunity, if not an obligation, to help develop the record. And he did that, Your Honor, in the text order when he's, and this is pre-November, I'm sorry, October 9th, when he's telling the government, hey, there's a serious objection here and you've given me nothing, nothing but assertions. In our adversarial system, the judge's role isn't to do justice, though. It is to decide the case. It's the judge's job to ask questions, though, and help get the record developed. If the judge has to decide, is this sub-1 or sub-2 conviction? I need the facts. You know, help me get the facts. You're right, Your Honor, but Peppers tells us if the government chooses to proceed with no documents, you rely on the least culpable. So that's a valid strategic choice that the government can make. And on October 9th, they made that strategic choice. All right. I think you're right. There was some strategy here. But one of my problems with this appeal is that this occurred over five years ago. Excuse me. This case occurred over six years ago. I'm looking at Judge Hornak's memorandum opinion. It's dated January 16, 2019. Here we are in 2025. There's a lot of water under the bridge since then. And this was delayed and delayed because there were cases coming down the pike, right? Right. And is it not the case that is very meaningful to whether this guidelines range was correct, as to whether your client was convicted, in fact, under sub-1 or sub-2 of the statute? Isn't that important to know? It's important because... That's the whole reason we're here. Right. That's why we're here. All right. And because that's important to know, why shouldn't we just send this case back because of all that has transpired? And then Judge Hornak can then focus the court's attention and the parties can focus the court's attention on, was it sub-1 or was it sub-2? I'm very troubled by the documents that we have here and I'm troubled by the way this case was litigated. So I'm wondering whether the prudent thing to do is just to have a do-over done here. I disagree, Your Honor. And here's why. Peppers was the law at the time and it's least culpable. And that wasn't new law. That's been the law for a really long time. The obligation of the government to produce Shepherd documents has been the law for a really long time. I can point to a case in 2009. Now you're getting back to the waiver of forfeiture issue. Assume you lose on that. Okay. Then why shouldn't it be sent back so the judge can figure out what happened in front of Judge Manning? The record is thin. There are documents that seem to be... Some of them are hard to read. The whole thing's a bit of a mess. And our job here as a court of review is not to the facts. It's to review the work of the trial court. And I'd like to see the trial court have a crack at doing this focused on the issues at hand without us trying to sort through all this on appeal. Respectfully, Your Honor, the parties below agreed that the records, the Shepherd records that were submitted were inconclusive and they are at best inconclusive. We have a sentencing order that explicitly... It's a plea and sentencing order that explicitly says that the plea was for subsection one. That, to my way of thinking, should be game, set, match. It says subsection one. Game, set, match. There's a docket sheet that says it's sub two. The docket sheet is not a proper Shepherd document. And I understand the court has this opinion. He thought it was. And we have dicta from some of our opinions that suggest the docket sheet could be a Shepherd document. Maybe it is. Maybe it isn't. But the district court here should really focus on that and tell us why you should be able to litigate that, right? And say, Judge, this is not reliable. This docket sheet should not be something worthy of the court's reliance. Well, that was litigated, Your Honor. And he made a decision that he was going to rely on it. And it's a legal question. Is it a Shepherd document that's properly before you? I do want to stress, not all docket sheets are docket sheets. They're not all created equally, just because something's called a docket sheet. Howard is the case from this court that talks about the docket sheets from the Municipal Court of Philadelphia. That's a docket entry. That's the docket sheet, the way attorneys and lawyers think of a docket sheet. That's the court's own document. It's the court's own document. This UJS document is not like the clerk's minute entries, which are what we traditionally look at. Those are contemporaneously prepared at the time of judicial action by a judicial clerk or a staff member who's present and he's observing the proceedings. That's the municipal court docket that you approved in Howard. This document is more like the document in Hernandez, a certificate prepared by the clerk after the fact. All right. And what did Judge Hornak say about all that? Nothing. The argument was made that this was not a Shepherd document, and he elected to rely on it. Was it made in the way you just made it, which I think is very helpful to make it the way you made it, but I didn't see the case litigated like that below. There was an argument made that this was not a Shepherd document. This is data entry by somebody and some court staff, and presumably that person who's doing the data entry and picking from a drop-down menu may be looking at the actual Shepherd document, but he's transposing that information. And Hernandez is the case from this court that says when you have a document like that, like transposing of information from true Shepherd documents, and there's a dispute, you have to look to the true Shepherd document. And the true Shepherd document in this case is the actual conviction record, which specifically identifies sub one as the offense of conviction. But even if you're uncertain and even if you're saying there's countervailing information, I disagree. This is not a Shepherd document. The tie goes to Mr. Payo. What's the harm in the remand? I'm not sure why. There's no need for a remand because nothing else can happen. You would be determining, is this a Shepherd document? Under Hernandez, you would be saying, even if we're looking at this, this document can't trump the actual Shepherd records. That's what Hernandez is for. But the documents are all over the place. I'm surprised you didn't respond to that question by saying fairness, whether or not it's fair to do that. But the law is clear. If the records are unclear, then the tie goes to Mr. Payo. The records have to conclusively establish- Goes to the question of fairness. I'm sorry. Which goes to the question of fairness. To Mr. Payo. Correct. Right. There's no need for a remand because on these records, the conviction rests on sub one. And then- And these records, sub one, which record is under sub one? The Shepherd document, the conclusive record, so he's charged in an information with both subsections. And the conviction record is the plea and sentencing order at appendix page 187. I might have that wrong, your honors. Sorry, 179. That's signed by Judge Manning and attested to by the clerk. And it identifies the subsection, robbery, serious bodily injury, 3701A1I. That's the conclusive record. It's a sub one conviction. What page number was that again? That's appendix page 179. And so this web portal document, even if you want to look at it, it can't trump the actual Shepherd document. That is the law in Hernandez. Hernandez says we must look at the actual conviction records if they exist. Can I just go back to big picture? There has been a long delay here. Certainly, we're now at six years since the judge decided what he's going to do in terms of whether it be a 27 or a 33 on the enhancement. When is Mr. Peo supposed to get out if it's a 33? Was he supposed to be released from prison? This was a career offender determination, so there's still- The career offender designation doubled his, so it was like 71 versus 151 was the range. So he has time, and if we were to be successful, it would result in a meaningful reduction in sentence for Mr. Peo. So if it's a 33, he would roughly get out when? Is it 27, 28? I was trying to do the- I'm sorry, Your Honor, I didn't do that calculation. Just trying to think, practically speaking, are we up against the gun in terms of his, if it's a 27, he gets out very quickly, like right now? I mean, that's possible. I'm doing some math in my head that that's possible. I'm not sure that that really matters. We'd be asking for a remand for resentencing. No, I get it. I mean, back to Judge Hardiman's question about why not just remand. You know, you could rely on the Dickler case from 95 that says, hey, the government gets a chance the first time around, but then you look at the Roe case from 2019, it's 919 F3rd 752, in which we acknowledge that Dickler recognized a limited exception, but held that the government did not provide a good reason for its failure, so we vacated the sentence, remanded, and specified that the government may not introduce new evidence to prove drug quantity. In other words, there's parameters on the remand. What's wrong with just following what Roe did and giving a really good judge a chance to look at this? He's trying to do the right thing. We're all trying to do the right thing, and that seems to be one of the best ways to sort it out. Sure. I did rely on Dickler. I did say that the government shouldn't get a second bite at the apple. I'll say this. The law hasn't meaningfully changed in these six years with respect to this issue. At the time, we were arguing that robbery was indivisible. Judge Hornak ruled against us. He ruled that it was divisible, and he looked at the documents. That's ultimately the way this court has decided this issue. So he did. He predicted what you were going to hold, and he properly held that the statute was divisible, and then he looked at the records. How we look at records is a legal question that we review de novo, and you have the record before you. And as Judge Ambrose noted, the Dickler case says this court disfavors if the government bears the burden on an issue as it does with queer offender enhancement, it must stand or fall on the record it created. It doesn't get a second bite at the apple when, as here, the government was on notice and had a full and fair opportunity to litigate this issue and present the Shepard document. But I'm looking at the document, and I don't understand why you say that 179 helps you. I mean, the top right corner says counts one and two, robbery, serious bodily injury, 3701A12. Or is that A11? I don't know what that is. I have no idea what that last character is. It is A1I, but there's been no dispute about that. It's A1I? Everyone agrees that that's A1 capital I? There was no dispute about that, Your Honor. But the statute doesn't use a capital I. The statute uses a lower I with a dot or two I's with dots. The whole thing to me is very confusing. And what's also confusing to me is that you're arguing here to us that you win this case because the Shepard document clearly shows that your client was convicted under sub one, correct? Or... Is that correct? It either clearly shows or it doesn't conclusively establish that. Okay. But yet your colleague in the district court fought tooth and nail saying this is not a divisible statute. If you had a winning argument in the district court that this is a sub one conviction, then your colleague would have been arguing tooth and nail, yes, this is divisible, and look at the Shepard documents. This gets back to my problem with how the case was litigated below. The case was litigated below by both sides in a way that is now being litigated in a completely different manner. So the whole case, and I'm not blaming the lawyers. I think the lawyers were making the best decisions that they could make in the district court at the time. The point that I'm that it is now. So that seems to scream out for a remand. Respectfully, Your Honor, I disagree. The argument was nested. It was the statute's not divisible. If it's divisible, it's divisible by penalty, which is what Peppers had indicated. And if it's divisible more than that, the argument was the government bears the burden of putting on the records. And if they don't and they didn't hear, then you have to go with the least culpable. The defense counsel also argued that if the records are unclear, you have to determine that the conviction rested on the least culpable. That was the law then. Those were the arguments that were made. That's the law now. And that's the argument that I'm making. Remand is unnecessary. If you're affirming, you'd be affirming on an alternative basis. And that is that sub one qualifies under the enumerated offenses clause. And I see that I'm out of time. We haven't spoken on that issue. I think that's the hardest issue here. I could quickly. What is a generic robbery? Some of the work is done. You've already decided that generic robbery has three elements. The taking of property from the person or immediate presence of another. Pennsylvania's robbery statute, is that a generic robbery or is that not under either one or two? It is not under either one or four. Those are the subsections we're saying are at issue. The clearest example of Pennsylvania robberies over breadth is that the person or presence element is missing from subsections one and subsection four. Why I say this is straightforward. Robbery is defined though as force in including an escape from attempted theft. If you add to the presence of the person, is that what you're arguing? No. Let me take you back just a step. We have the second circuit and we have D.C. They've already done a 50 state survey and they've said most states have this taking from the person or presence requirement. The government acknowledges that the majority of the states have that person or presence requirement. And so then your job is to look at how PA has defined this statute. The statute only subsection five has that person or presence requirement. We're really only looking at the text of these statutes. That's a plain language argument. I'm pointing to cases like Commonwealth versus McCollum and Brandom. Those cases say the element of taking from the person or presence of another is only under sub five and it's not under any other subsection of the Pennsylvania robbery statute. So this is a plain language argument and the text of the statute illustrates its overbreath as compared to the accepted generic definition which requires that element of presence. In terms of force, which is part of what your honor's question was, generic robbery excludes snatchings, mere snatchings. So for that we've provided an updated survey from the Stokeling survey that was provided by the government and their addendum. There are four states in the D.C. and D.C. that punish sudden snatchings as robbery. So if generic robbery doesn't include snatchings, we know Pennsylvania under sub one and sub four does sweep in snatchings and there's Pennsylvania authority for this. The Supreme Court case of Pennsylvania, Commonwealth versus Rice. And there's also Commonwealth versus Scott, both of which contemplate- Because it was deadly force. It should not be deadly force. It was infliction of injury. Yes, you're correct about that. But it wasn't force that caused that. It was a sudden snatching that led to the death of the victim in the Rice case. And Pennsylvania is very clear. They're not requiring force. They're not even requiring common law force, overcoming victim resistance. What they look to is awareness versus non-awareness. So if you're not aware that there's a snatching, that's a pickpocket, that's a larceny. I'm not sure how much Rice really helps you because the court was reciting the facts that they snatched the person, the person spun around and fell, lost her balance, fell, hit her head and ultimately died. There's no mention. We don't know if force was used at all. It might have been. So I'm not sure that Rice is as supportive as you say. These cases, Rice and Scott are noting that Pennsylvania, when it left the common law, it abandoned that common law force element and went with the model penal code. It got rid of overcoming victim resistance and went with this theft, infliction of serious bodily injury or bodily injury. And they also make clear that in doing that, snatching can qualify. And I say that because the Rice case cites an earlier case from the Pennsylvania Superior Court. That is a victim at the bus stop holding a purse. A salient snatches the purse out of her hand. There's no reference to overcoming resistance. There's no reference to jostling. And the court says absolutely a person can be convicted under sub one or sub two if in the course of the snatching, the person is injured or if the defendant is threatening force. So Pennsylvania contemplates snatching, forceless snatchings, with victim awareness as being covered by sub one, sub two, and sub four. And that is not within the meaning of generic robbery. The victim's awareness, I hadn't factored that into this analysis. I was a state court judge when Brown was decided. And I can't begin to tell you how much Agena state court judges then, I think probably still are, went through trying to decide the element of force under 37-01, primarily because of the inclusion of force of arbitrary slight, which is not involved here, the five, little Roman number V. And trying to understand a purse snatch like we have in Rice and a pickpocket. And I think Brown was a pickpocket. And I think at one point, Supreme Court said maybe it was Brown, Supreme Court of Pennsylvania, that the force is directed only against the object, to secure the object and not against the person. That's Roman number V, that's a pickpocket. But the force is directed against the person to get the taking. Like a purse snatch, that is, I'm sorry, there's also a problem there of misdemeanor theft as opposed to robbery. And I'm not sure it ever got resolved. It's kind of lurking in the background here. Because arguably, if you don't, if you have force under five, which is a pickpocket, it's arguably misdemeanor theft, theft from the person as opposed to a robbery. So subsection five captures a snatching, but it also can capture the common law robbery, that overcoming victim resistance. It doesn't necessarily require the overcoming victim resistance because the language is forced. In the traditional case of five, you don't have resistance because the person, it's a pickpocket, the person's not even aware that... Well, a pickpocket actually would not be, would not satisfy sub five. Pennsylvania's been very clear, Bendell, Brown, they draw the line at victim awareness. If you're not aware of the taking, then it's a pickpocketing and it's a theft. You're not creating that risk that the victim might react by grabbing the item. Snatching doesn't involve that risk either. It's a sudden snatching, the victim's surprised, no moment to react. That's exactly what the Fourth Circuit has held in cases like Gaddis and Fluker, and that's what the First Circuit has held in RAB, R-A-B-B. Those cases involved Georgia robbery, and I think maybe a New York robbery. Those robberies were broader than generic robbery because they swept in sudden snatchings exactly in the same way that Pennsylvania does. You basically reward the skillful pickpocket as opposed to the prankish pickpocket. Well, actually, you're punishing the purse snatcher who, as a consequence of his action, causes someone injury. So they're not going to be punished in this minimal way. They're going to be treated as a robber because someone was actually injured, and that's a decision that the legislature was free to make and did make in Pennsylvania. Okay, we'll hear you on rebuttal. Thank you, Ms. Petropoulou. Mr. McHale. Good morning, Your Honors. May it please the Court, Matt McHale on behalf of the United States. Let me address your question, Judge Hardiman, about what harm would a remand do here, and I think that— Factor fairness into that analysis. I'm sorry, Judge Hardiman? Factor fairness to PEO or to both sides into that analysis. Yes, Your Honor. I think that it's important to focus on the nature of the objections that PEO made to the PSR some six years ago because I think it's a little bit different from—and in the government's view, it was not sufficient to really move the needle on to take away the government's ability and the district court's ability to rely on the PSR. Paragraph 57 that addresses this— Well, doesn't the PSR refer to things like police reports and things like that, so how much should a PSR be part of the Shepard documents? The PSR can do that, but it does more, and what I would draw the Court's attention to specifically is what the defense was objecting to in the PSR right from the start when they filed their position on sentencing factors, and the government said, we're fine with the PSR. It was just a general—it was an omnibus objection. In my opinion, yes, and in fact, although actually I would go a little bit further and say it actually explicitly carved out and said we are not objecting to elements of the offenses of conviction, and that's on page 98 of the appendix where Mr. Peo was objecting to factual descriptions, and their position was, well, this was just taken from police reports, but not, quote, elements of the offenses of conviction, and then—and again, and the premise here is that paragraph 57, as we say, describes the conviction of issue as, quote, threatens serious bodily injury, and of course our position on Judge Hornak's finding was that that is robbery, too, and then even later when—and I think the district judge in that status conference that was held was really struggling with the broad sweep potentially of what the defense was saying, and the judge kept saying at one point, he says, what exactly are you arguing I can or can't take into account, and at one point then later, he says, what your—the implications of your objection here would be a bombshell in sentencing procedure. Well, but the judge had the same issues with your predecessor in the district court or your colleague because the judge said, you know, what about the Shepard documents? And your colleague's response was, we don't need them, and the judge said, no, but I need them, so go get them. The whole—isn't it fair, Mr. McHale, at a high level of generality that—to say that this case was litigated in a totally different way in the district court? Your colleague and Ms. Petropaulo's colleague were focused on different matters, and now we're being asked to decide this as a matter of law when I'm not even sure—  Years later, and I'm not even sure what the true facts of the case are. I'm loathe to decide a case—now, if it's just a question of law and the facts don't matter, or if both sides agree on the facts, fine, we'll decide the question of law, but I don't see that here. I see a jumble of facts. I appreciate that, Your Honor, but I think that is where the standard of review comes in, and that is where, as we've cited in our brief—can we just go back and sort of lay the groundwork? Everyone agreed, for career offender purposes, the 0-1 robbery was a crime of violence, right? Correct, a federal bank robbery. Then the question is, was it the 0-8 or the 10? I don't recall, at the outset, you're saying that 10 was the one that gave you the second crime of violence. You were relying on 0-8. Is that correct? I don't believe that's correct, Your Honor. I believe we also— Did you ever argue before the district court that subsections 1 or 4 were crimes of violence under the enumerated offense clause? That's what the judge ultimately went off on, right?  We argued—yes, I believe we did. I mean, I believe we argued 1 was an enumerated offense clause. Where can you point to me that in the record? I don't have it in front of me, Your Honor. Your 28-year letter, then. Afterwards. Yeah, you don't do it. I don't want to put you on the spot now, but I don't—I couldn't find it. Yes, Your Honor, and the court did find—the district judge did find that 2010 conviction for robbery 4 also qualified as a predicate for career offender. And so, to go back to what was being said at the status conference, the—Mr. Paya's counsel in front of the district judge said, you know, yes, they were disputing the factual allegations that set forth in the PSR. But specifically on pages 162 to 163, the counsel said, putting aside career offender, I mean, the point was, okay, we're arguing he's not a career offender. He is not objecting to the fact that he's convicted of what the pre-sentence report is identifying him as being convicted of in the past. And so, in my view, that is—the government's position from the start— Do you have an admission that it was a sub-2 conviction? Yes. I mean, I don't know how to understand that. What is being carved out there—okay, we're objecting to factual allegations. So, for whatever reason, they're objecting that the store was a JCPenney, and the other one was a Giant Eagle. I mean, that was listed in the, you know, factual allegations. But if what is being carved out is what the PSR says he was convicted of in the past, which has to be robbery, too. I would admit, the PSR itself does not say Romanette II in paragraph 57, but it says, quote, threatens serious bodily injury, which there's no way to understand that. Well, but if she was objecting to the facts, though, then she's objecting to the fact that it was threatening bodily injury. I mean, hypothetically, that could be true, but I don't know how to extract that kind of— I think it's tricky, but let's assume you lose on that. What are we to do with the apparently conflicting documents? We've got a docket sheet that pretty clearly—I can read that one because it's typed. The docket sheet that's in Appendix A that Judge Hornack relied on says it's a sub-2 conviction, but Ms. Petropaulo pointed out at Appendix 179 that—the thing that I can't read, is that a 1? And she says that the government below conceded that it was sub—that that was a 1, a capital Roman numeral 1. I believe—I mean, I think I said in my brief it appears to be a 1. I mean, I said—and we included an image of that very page in our brief. Yeah. I mean, I also said it's not—I mean, it's not clear whose handwriting that is. It does appear to be in front of Judge Manning, but I don't know necessarily. It doesn't—I mean, who knows who wrote that there? But as I said earlier, I do think that's where, in response to your question about why not send it back, where the standard review has some bite here because, as we cited cases in our brief saying, this was—I mean, the district court made a call and found, as a matter of fact, separate from the legal question of whether 1 is a crime of violence or 2 is a crime of violence. This person was, in fact, convicted of 2. Right. But he—but his decision, his finding, his factual finding that this was a sub-2 conviction was based on the docket sheet, which is prepared by a clerk, not the court. It has— But the document prepared by the court contradicts it. So why isn't that tie goes to PEO? Well, well, first of all, because the PSR—I mean, there's—you still have the PSR and what the PSR identifies. But the problem with the PSR is what Judge Ambrose mentioned to you, and the PSR itself is not a Shepherd document. Well, I think it is. It can be—it can be relied on— If there's no objection. There can be—there can be admissions. If there was an objection. Yeah, and if there's no substantial objection or— There was—and Judge Hornak specifically said your objections noted. He said that on several occasions, that your objection to that is preserved. Well, he—I guess what I would describe it as is what—and again, based on the language that I just read out. I mean, yes, there were objections being made to the factual allegations of PSR. But what is being carved out when the defense counsel says, I'm not objecting to, you know, what was—what the PSR identifies him as being convicted of. And again, so— If we did—if we did—if we did remand it, what would that hearing look like? I would assume that the judge would focus on the issue of, is this a sub-1 or a sub-2 conviction? And let's gather all the evidence and—and because I'm quite confident Judge Hornak wants to decide the case based on what really happened in the state court, not—not on some, you know, categorical approach as we know puts us in fantasy land in a lot of ways. But he wouldn't be interested in that. He'd be interested in what the actual predicate crime of conviction was or wasn't. So what would that hearing look like? I mean, yes, that would— Based on your knowledge of the record. How would that unfold? I mean, I think— In the—just show my cards. The reason I'm asking you that is I'm—I'm not interested in a remand if we're sending the government and the defense on a fool's errand. But I'm—I'm not assuming it would be a fool's errand. Well, I don't—I mean, Your Honor, I—I—I mean, so one additional piece of information that we have now that the government got during the pendency of his appeal, as you know, is the plea colloquy transcript. I don't know how that helps you.  Plea colloquy. It's thin. It's thin. Pail says he was high when he committed the crime. Didn't really remember. Well, I mean, the—I mean, this court in McCants and in—in Mark Harris, in a different circumstance, you know, involving a different kind of crime, has looked at plea colloquy—plea colloquy transcript. Wait. This is a plea colloquy like I've never seen before because he never assented to the—to the factual predicate. The factual predicate is read, and the defendant was never asked, do you agree that that is what you did? It was never something—quite a question similar to that. He was never asked. Just it's read and that's it. I think the most—as in McCants, for example, the most natural reading of the plea colloquy transcript is that he was convicted of two because there's no— If he had agreed to it, yes, but he didn't agree to it. Well, it—I understand, Your Honor. I mean, his counsel had no objections or—of any kind other than to actually add the fact that he didn't intend to hurt anyone because all he did was— The objections are relevant. I can't tell you how many pleas I took in 10 years in a state court. I couldn't imagine taking a plea, unless it's a noble plea, which this wasn't, and not asking the defendant, do you agree that that is what you did? Are those the facts you're pleading guilty to? Are those the facts you're admitting? That's—basically, it is what the heart of the guilty plea colloquy is. It's the reason for the guilty plea colloquy to establish the defendant's guilt via the defendant's admission. And in McCants, we relied only on facts that the defendant specifically confirmed in his plea colloquy. That's at page 427 in McCants. And you remember Judge Manning's colloquy here with Payo was, are you here to plead guilty? Yes. Why? Because I'm guilty. He said that twice. Tell me why you're guilty. What did you do? It can be rough justice sometimes in state court, I guess. But to go back to what I was saying earlier— Can I just go back to this plea colloquy? You rely on the plea colloquy for the 08 crime for the first time on appeal, is that correct? Correct, Your Honor, yes. So why isn't Ms. Pietropalo correct that this is just Dickler? This isn't a case where you can parse it a little bit by saying, hey, we ought to have a remand under Roe. This is just no can do. This court takes a different approach in other cases, as we've cited. Because there's no point for a remand necessarily when you're just going to be sending it back to the district court to consider something that this court can anyway. And the court has taken judicial notice. Yeah, but if we can consider it, that doesn't mean that you've given fair notice to the other side to actually litigate it, which is why from the beginning, I've been harping on a remand. Do it over. Do it right. Get the facts. Find out what the predicate conviction was or wasn't. Make a decision. And then if someone wants to appeal, we'll hear it again. I appreciate that, Your Honor. And I would just, at the risk of going over already trodden ground, I mean, I would just say the standard of review has to matter to the extent that if it is the appellant who is saying, this was a mistake of fact, namely the fact of which conviction he was under, then you have to meet that relatively high burden to show not just that it could have come out the other way or another judge might decide things differently, but there has to be clear error, clearly erroneous, in order to disturb the district court's factual finding. And so I think, to go back to where I started, where from the beginning, the government's position has always been that the PSR identifies the element of which, you know, that he was convicted of, and we've produced additional documents along the way that support that. We acknowledge there is some confusion and some other documents pointing either way, but that's where the district judge's, you know, particular role in having already found, as a matter of fact, that this was robbery, too, should count and not necessarily result in a remand. But that finding was based in part, if I'm not wrong, on documents which, as Judge Amber mentioned earlier, disclaim their own accuracy. You're referring to the docket? Right. Docket sheet. I mean, I read that as, you know, sort of a boilerplate disclaimer of liabilities, so that if, you know, if an employer were to not hire someone, I don't know, based on, like, looking up someone's name, that the court, you know, unified judicial system can't be held liable for that. But I think Henderson and Howard both talk about, you know, taking judicial notice of a court's dockets. Where it's the court's own record, which is not what we have here. Well, I'm not sure how else to describe that docket sheet, though. I mean, that is, you know, a product of the judicial notice of things that are, you know, fairly certain. There's some question about the certainty of the document. And the preparers, or the people that are disseminating it, have a disclaimer on every page. I appreciate the honor. I still think that there's precedent in this case for the district judge to do what he did and take that notice. I think you'd have a really good argument if the only Shepherd document were the docket sheet. But there's another Shepherd document, the sentencing order. The sentencing order contradicts the docket sheet. Well, so again, as a reviewing court, what I would have liked to have seen was the dispute be resolved between the conflict. And I would like the trial judge to have had the opportunity to write an opinion that says the defense relies on the sentencing order, which is a little hard to read in handwriting, but appears to be a sub-1 conviction. The prosecution relies on a typed docket sheet, which says pretty clearly that it's a sub-2 conviction. Both cannot be true at the same time. And let's litigate the issue and figure out which it was. I appreciate the honor. I see my time is up. We would also argue in the alternative, as we have in our brief, that even if robbery won, this is a crime of violence as well. I'm happy to argue that further. Or would... Under sub-1? Correct. Do you want to address the comments or the arguments on the other side about whether the PA statute is broader than the generic form? Your Honor, I would address the two primary ones that I heard from my friend on the other side are the personal presence requirement and no force at all. And I don't think either one of those arguments flies for the reasons that we say. Number one, the personal presence argument was not made below. I mean, sort of going back to what Your Honor said about the way this was litigated below, that's plain error review here. And as we said, where is the case that shows that somebody can inflict serious bodily injury without being in someone's presence? And I haven't seen a case like that. So I don't think that they have met that high bar of saying, well, it's obvious that PA robbery won exceeds generic robbery. Were the questions of sub-1 and sub-4 being crimes of violence fully litigated below? I would say not exactly. No, because... And I would describe that as being partly a result. I think they would be litigated today based on the state of the law today. Right. That's changed.  But nonetheless, the defendant here could have made the argument that robbery one doesn't qualify as an enumerator offense. But I think if you look at what was actually argued below, it's indivisible. And it's not a crime of violence because robbery three doesn't require force. But there was agreement that subsection one was not a crime of violence because it can be committed via recklessness. That's under the elements. Under the elements. But we maintain that as an enumerator offense, it can be.  So we would ask the court to affirm ultimately. Thank you, Mr. McHale. It's your rebuttal. Thank you, Your Honors. I'm primarily going to rely on my reply brief, which addressed much of that, and I think answered a lot of the questions that Your Honors asked of Mr. McHale. The most important thing that I heard Mr. McHale say is that he's acknowledging that the documents are inconclusive. In that situation, the categorical approach says that the Shepard documents must conclusively establish the offense of conviction, and if the records don't speak plainly, Taylor's demand for certainty has not met the condition. I don't think you're really steel manning his argument because if you looked at them in a vacuum, they're inconclusive. But what he said was that the district court made a finding of fact that it's a sub two conviction. Well, he did in his opinion. His opinion said... That was a legal determination looking at a non-Shepard document. If, for example, Your Honor, he had looked at that appendix... Not a legal determination. The question of whether somebody in a divisible statute is convicted under subsection one or subsection two, that's a historical fact. That's a historical fact with a legal consequence that somebody may or may not be a career offender, but that's a fact. He found that it was a sub two conviction. I'm questioning the legitimacy of that finding because you've pointed to a document that he was charged under sub one, not sub two. But I'm curious to hear your response as to... I assume your answer is that he was clearly erroneous in that factual finding that it was sub two because there's a better, more reliable document in the file that shows that he was convicted of sub one. Is that the argument? And those, again, Your Honor, are actually legal arguments. When you're doing the categorical approach, there's a bunch of... There's a series of legal questions to get you to what was the offensive conviction. Those are legal determinations. If, for example... It's a legal determination whether it's divisible or not. Well, just to be clear, Your Honor, if Judge Hornak had looked at that appendix page 187 and looked at that number and said, I think this is sub two, not sub one, maybe that would be a fact finding and then we'd look at it. That's not what he did. He was looking at a non-Shepard document and coming to a different conclusion after... But assume that we think the docket sheet is a Shepard document, but it might be of different reliability than the sentencing order. Right. And so then the application of the modified categorical approach and what weight you give to documents is a legal question. It's not reviewed for clear air. The government cites one case that was an alternative holding that really shouldn't govern this case. The cases that Your Honors are deciding based on the categorical approach are all reviewing these questions de novo. This is plenary review. It's not clear air. And with respect to the consideration of the guilty plea transcript, I'm not going to reiterate what I've already said, but I do think it's important just to holistically think about the guilty plea as an analog to trial. The modified categorical approach applies to both in exactly the same manner. And the Supreme Court has told us for tried cases, reviewing courts aren't to look around at the transcript for evidence that came in, testimony that came in, admissions by the defendant. That's what the categorical approach was intended to avoid. What the court's supposed to look at is jury instructions. What was the jury required to find? And Supreme Court has told us what that looks like in tried cases. In Taylor and Shepard, they say a later review in court isn't to look at the trial transcript to glean that the conviction rested on entry of a building just because there was no evidence referring to boats or cars. You're supposed to look at what was the jury required to find. And this analogy to tried cases applies to guilty plea transcripts, and it should guide your application of the modified categorical approach in those plea cases. DeCamps, at page 262, makes this abundantly clear. The court's responsibility is not to determine what the defendant and the state court judge must have understood as the factual basis of the prior plea, but rather to assess whether the plea was to aversion to crimes corresponding to the generic offense. So you can look at the transcript. But all of those details are under the larger question of whether a Shepard document says that you're convicted under this statute or that statute. So I'm not sure that's helpful here because we do have Shepard documents that say he was convicted under sub 1, and then there's a different Shepard document that says he was convicted under sub 2. And what I'm getting at is if you disagree with me, and you're going to look at the guilty plea transcript, you shouldn't be looking at the factual basis and saying, well, I'm going to... I think you're on good footing on the... You're talking about the Judge Manning guilty plea transcript? Yes. Yeah, I think you're on good footing on that because there's just nothing there. That helps the government. There's a lot there that helps you because your client didn't tell Judge Manning what he did. He just said he was guilty. And he also said he was high when he committed the crime. And Judge Manning also recited both subsections of the statute and didn't require the defendant to make a choice. And this was a plea agreement case. So people plead guilty all the time. These are the lessons of Mathis. These are the lessons of Taylor and Shepard. We're not supposed to look around, even if there had been some sort of yes, I did it moment. That admission to the factual basis can't be equated with I'm admitting to one or the other of a divisible statute. And the other reason... Can you just address paragraph 57 for us? Mr. McHale's argument that there was not a sufficient objection made to the description in the PSR paragraph 57. I disagree completely. Defense counsel here was reacting to this court's very robust waiver jurisprudence. She's citing Siegel and saying, if I don't object, Siegel says this is going to be an admission. So I'm objecting. And then she's making very clear as that it was like an off-the-cuff status conference. And then as that status conference progressed, she's saying, I'm objecting to reliance on extra elemental facts in the PSR derived, for example, from police reports and affidavits, appendix 86 to 87, 237, 149, 153 and 54, 156, 198. She's saying those PSR state... We know those statements couldn't have come from a transcript or anything. We know they came from the police reports. The transcript didn't exist at that moment. The trial AUSA importantly conceded that the district court couldn't look at non-elemental facts in the PSR paragraphs 57 and 58 to determine robbery was a crime of violence. He disclaimed reliance on statements in those paragraphs to meet its burden of proving career offender. This is appendix pages 147 to 148, 152. And he says, 161, I think, Peo's argument is correct as applied to the career offender determination. The district court sustained that objection. Appendix pages 21 to 23, he said he's not going to consider those non-elemental facts in the PSR. So the idea that Mr. Peo somehow admitted things after objecting to this degree is really not defensible. I think you had another part of that question that I didn't catch. No, that was... Thank you, that was helpful. Oh, and by the way, you did ask if the government had... Judge Amber, you asked if the government had made an enumerated offense clause argument below. They did not. Defense counsel objected under both the force clause and the enumerated offense clause. The defense counsel offered a definition of generic based on citing graves. The government never countered the definition, never offered a different definition, never relied on the enumerated defense clauses at all. That's something that Judge Hornak points out. I'm sorry, Judge. I didn't understand what you said. You said never relied upon something. Never cited the enumerated defense clause. Judge Hornak actually notes that in his opinion that the government hasn't relied on the enumerated offenses clause, but then he went on to decide that sub-4 did count under the enumerated offense clause. This would be something... But now, the focus is on the enumerated offense clause. If you reach the enumerated offenses clause, though, Mr. Peo waived nothing. The government may have forfeited its argument, but I don't even think that that's true. If you're reaching that argument, you'd be reaching it in the alternative, right? Affirming, and I hope you don't affirm, but you'd be affirming perhaps the district court's ruling on an alternative basis. That's a question that you reviewed de novo. We're not required to anticipate and then rebut those things in the district court. Okay. Thank you very much, Ms. Petropoulos. Thank you, Mr. McHale. Court will take this case.